POLSINELLI LLP
MICHELE HAYDEL GEHRKE (SBN 215647)
mgehrke@polsinelli.com
EMILY KNOLES  (SBN 241671)
eknoles@polsinelli.com
BRIAN K. MORRIS  (SBN 281409)
bmorris@polsinelli.com
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
Telephone:   (415) 248-2100
Facsimile:    (415) 248-2101

Attorneys for Defendants
L-3 COMMUNICATIONS VERTEX AEROSPACE,
LLC (erroneously sued as L3 TECHNOLOGIES, INC.)
PATRICK K. BANTILAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| DARRELL KROEGER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>L3 TECHNOLOGIES, INC., a corporation; PATRICK K. BANTILAN, an individual; and DOES 1 through 10,<br><br>Defendants. | Case No. 2:17-cv-08489<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br><br>State Court Case No. BC678059<br>Date Action Filed: October 6, 2017<br>Trial Date: n/a |
|---|---|

Polsinelli LLP
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
(415) 248-2100

074144/579416-61138340.3

Case No. 2:17-cv-08489

NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants L-3 Communications Vertex Aerospace, LLC (erroneously sued as L3 Technologies, Inc.) ("L3") and Patrick K. Bantilan ("Bantilan") (collectively referred to as "Defendants") hereby remove this action to the United States District Court for the Central District of California. Defendants remove this action pursuant to the Labor Management Relations Act ("LMRA" or "Section 301") (28 U.S.C. § 185); 28 U.S.C. section 1331(a); the federal enclave doctrine (U.S. Const. Art. I, Sec. 8, Cl. 17); and 28 U.S.C. § 1367(a).

**I.      PROCEDURAL HISTORY**

1.      On October 6, 2017, Plaintiff Darrell Kroeger ("Plaintiff" or "Kroeger") filed the above-captioned complaint in the California Superior Court for the County of Los Angeles.

2.      Plaintiff served Bantilan on October 22, 2017.  (Declaration of Patrick Bantilan ["Bantilan Dec."] ¶ 6).

3.      Plaintiff served L3 on November 6, 2017.

4.      Plaintiff brings claims for (1) failure to pay overtime; (2) violation of Labor Code Section 6310; (3) violation of Labor Code Section 1102.5; (4) failure to indemnify Plaintiff for work-related expenses; (5) failure to timely provide payroll and personnel records; (6) violation of the Ralph Act; (7) violation of the Bane Act; (8) disability discrimination; (9) failure to provide reasonable accommodation; (10) failure to engage in the interactive process; (11) retaliation in violation of public policy; and (12) intentional infliction of emotional distress ("IIED").  (*See generally* Compl.).  Plaintiff brings the first through fourth causes of action in his individual capacity and as a representative plaintiff under the Private Attorney General Act ("PAGA").  (*Id.*).

Polsinelli LLP
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
(415) 248-2100

5.      A true and correct copy of the above-referenced Complaint and all other pleadings, orders, and documents on file in the state court action are filed with this notice.

## II.      REMOVAL IS TIMELY

6.      The 30-day deadline for removal under 28 U.S.C. section 1446(b) has not been triggered because removability is not based solely on the four corners of the Complaint.  *See Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 695 (9th Cir. 2005) ("[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin.").

7.      Even if removability was apparent on the face of the Complaint, this Notice would be timely because Defendants have filed it within thirty (30) days of receipt of the initial pleading.  *See* 28 U.S.C. § 1446(b).  Plaintiff served Bantilan with the Complaint on October 22, 2017 and L3 on November 6, 2017, fewer than thirty (30) days prior to the filing of this Notice.

## III.      VENUE IS PROPER IN THIS DISTRICT

8.      Venue is proper in this Court because Plaintiff filed this action in Los Angeles County Superior Court, which is located within the District and Division of this Court.  28 U.S.C. §§ 84(c)(2), 1391, 1446(a).

## IV.      BACKGROUND

### A.      The Parties

9.      Plaintiff works as an aircraft mechanic for L3.  Bantilan has been Plaintiff's supervisor during the relevant time period.  (Compl. ¶¶ 6-8, 15).

10.      L3 supplies command and control, communications, intelligence, surveillance, and reconnaissance technologies.  Its customers include NASA, the Department of Defense, the Department of Homeland Security, and aerospace and wireless customers.  (*Id.* at ¶ 12).

## B.      Employment History

11.     During the relevant time period, Plaintiff worked at NASA Armstrong Aircraft Operations ("NASA Armstrong").   (Bantilan Dec. ¶ 2).    NASA Armstrong's main complex is located on Edwards Air Force Base.   NASA Armstrong is NASA's premier installation for atmospheric flight research.   It is chartered to research, develop, verify and transfer advanced aeronautics, space and related technologies and conduct atmospheric earth and space science flight operations.[1]   In addition to the main campus at Edwards Air Force Base, NASA Armstrong bases several earth science aircraft and the Stratospheric Observatory for Infrared Astronomy (SOFIA) at a nearby facility, Building 703 in Palmdale, California.[2]

12.     During Plaintiff's employment with L3, he has been subject to collective bargaining agreements negotiated between L-3 and the International Association of Machinists and Aerospace Workers, AFL-CIO District Lodge 725 and Aeronautical Industrial Local Lodge 727-P ("Union").   (*See* Bantilan Dec., Exhs. A-C; Compl. ¶¶ 20, 32).  The Union is a labor organization that is subject to the provisions of the LMRA.  *See* 29 U.S.C. §§ 152, 185(a).

13.     "The Union serves as the sole and exclusive representative and bargaining agent with respect to pay, wages, hours, and terms and conditions of employment for … all production and maintenance employees[.]"  (Bantilan Dec., Exh. A, Art. 01.00, *see also* Exh. B Art. 1, § 1(A)).

## V.      REMOVAL IS PROPER UNDER THE LMRA AND FEDERAL ENCLAVE DOCTRINE

14.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. section 1331 because it poses a federal question.  *See* 28 U.S.C. § 1441; *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal

[1] https://www.nasa.gov/sites/default/files/files/FS-001C_AFRC_FS_07_14.pdf

[2] https://www.nasa.gov/centers/armstrong/bldg_703/overview.html

courts have federal question jurisdiction over [] claims that arise on 'federal enclaves.'"); *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 935 (9th Cir. 1986) ("An action within the scope of § 301 is governed by federal substantive law [citation] and is subject to removal to federal court[.]").

15.    In evaluating jurisdiction, this Court may look to materials beyond the four corners of the Complaint.  *See Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) ("[A] federal court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims."); *Hawaii ex rel. Louie v. HSBC Bank Nev., NA*, 761 F.3d 1027, 1035 (9th Cir. 2014) ("[W]hen a defendant asserts that a claim is completely preempted, examination of extra-pleading material is permitted.").

### A.    This Action is Removable Under the LMRA Because Plaintiff's Claims Require Interpretation of a Collective Bargaining Agreement

16.    Section 301 of the LMRA grants federal courts jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization[.]" 29 U.S.C. § 185(a); *see also Franchise Tax Bd. of Cal. v. Contr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983) ("[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'").

17.    "Although the language of § 301 is limited to '[s]uits for violation of contracts,' it has been construed quite broadly to cover most state-law actions that require interpretation of labor agreements." *Builders & Contractors v. Local 302*, 109 F.3d 1353, 1356 (9th Cir. 1997); *see also Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1096-97 (N.D. Cal. 2014) (The LMRA preempts state causes of action that are independent of a labor contract "if a court must interpret…the collective bargaining agreement to resolve the [] claim.").

18.    During Plaintiff's employment, he has been subject to the above-referenced CBAs.  (*See* Compl. ¶¶ 20, 32; Bantilan Dec., Exhs. A-C).

19. Plaintiff's claims are preempted by Section 301 of the LMRA because they are substantially dependent on interpretation of multiple provisions of the CBAs or they are derivative of claims governed by Section 301.

### 1. Adjudicating Plaintiff's Overtime Claim Requires Interpretation of the CBAs

20. Plaintiff brings an individual and representative claim for failure to pay overtime pursuant to Labor Code section 510. (Compl. ¶¶ 128-132).

21. Labor Code section 514 exempts from the overtime pay requirements of sections 510 and 511 "an[y] employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Lab. Code § 514.

22. The CBA's overtime provisions need not be coextensive with section 510 to qualify for section 514's exemption. *Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 106-07 (2014) (Section 514 exemption applies even where "CBA provides that overtime is not paid for hours worked between eight and 12 in a workday."). When there is a valid collective bargaining agreement, "[e]mployees and employers are free to bargain over not only the *rate* of overtime pay, but also *when* overtime pay will begin. Moreover, employees and employers are free to bargain over not only the timing of when overtime pay begins *within a particular day*, but also the timing *within a given week*." *Id.* at 111 (emphasis in original); *see also Kilbourne v. The Coca-Cola Co.*, 2014 WL 11397891, *7 (S.D. Cal. July 14, 2014) ("[T]he Court finds section 510 does not determine when Plaintiff works 'overtime hours' and is thus entitled to overtime compensation. Instead, the CBAs do.").

23. The CBAs set forth the terms and conditions of Plaintiff's

employment, including but not limited to his working hours, rates of pay, meal and rest breaks, employee benefits, and dispute resolution.

24. The CBAs contain provisions regarding work schedules, the regular workday, and premium pay for overtime hours worked. (Bantilan Dec., Exh. A Art. 22.1-23; Exh. B Art. 7 §§ 2-3, Appendix H). They also set forth standard and alternative work schedules and methods whereby employees can exercise a shift preference. (*Id.* at Exh. A Art. 22.1-22.2, Appendix B; Exh. B. Art. 7 §§ 2-3, Appendix G).

25. The CBAs establish wage rates for covered employees that exceed thirty percent (30%) above the state minimum wage. (*Id.* at Exh. A Appendix A; Exh. B Appendix A).

26. The CBAs contain robust dispute resolution procedures that provide for final and binding arbitration of disputes. (*Id.* at Exh. A Art. 19.4 ["a decision of the arbitrator … shall be final and binding on both parties."]; Art. 19.1-19.3; Exh. B Art. 3 §§ 1-4).

27. Because Plaintiff brings a claim under Labor Code section 510, he necessarily takes the position that the CBAs do not qualify for Labor Code section 514's overtime exemption. To resolve the parties' dispute in this regard, the Court must interpret the CBAs to determine applicability of Section 510's overtime rules. *See Raphael v. Tesoro Refining and Marketing Co. LLC*, 2015 WL 3970293, *7 (C.D. Cal. June 30, 2015) (overtime claim preempted because court must "interpret the relevant CBAs to determine whether the disputed provision satisfies the requirements of CLC § 512(e) and [§ 514]"); *Ayala v. Destination Shuttle Servs. LLC*, 2013 WL 12092284, *4-5 (C.D. Cal. Nov. 1, 2013) (Section 301 preempts Labor Code claim where court must determine if CBA satisfies requirements for statutory exemption); *Buck v. Cemex, Inc.*, 2013 WL 4648579, *6-7 (E.D. Cal. Aug. 29, 2013) (Section 301 preempts meal break and overtime claims because court must evaluate CBA to determine if Labor Code §§ 512, 514 exemptions

apply).

28. If the Court is satisfied regarding the applicability of Section 514's overtime exemption, any overtime rights (and thus Plaintiff's claim) would exist solely by virtue of the CBAs and would thus be preempted. *See Coria*, 63 F. Supp. 3d at 1097 ("Because Section 514's overtime exemption applies, Plaintiff's claim for overtime must necessarily be rooted in the CBA."); *Raphael*, 2015 WL 3970293, \*5 ("[I]f the [Labor Code §§ 512, 514] exemptions are applicable … there is no independently created right for the claims … [T]he only rights at issue in that scenario would be those contained within the CBA and … as a result … the claim is preempted[.]").

29. Because resolving Plaintiff's overtime claim requires interpretation of multiple provisions of multiple CBAs, it is preempted by Section 301. *See generally Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000) (*citing Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) ("To resolve th[e] dispute, it would be necessary to apply California law to determine the overtime rights and obligations of the parties to the agreement. The claim is not 'independent' of the collective bargaining agreement under federal preemption law.").

## 2. Resolution of Plaintiff's Retaliation-Based, Discrimination, and Derivative IIED Claims Require Interpretation of Multiple Provisions of the CBAs

30. Plaintiff's second, third, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth causes of action allege various forms of retaliation and discrimination. This alleged retaliatory and discriminatory conduct gives rise to Plaintiff's twelfth cause of action for IIED.

31. To state a *prima facie* case of retaliation, a plaintiff must show: (a) that he engaged in protected activity, (b) he was thereafter subjected to adverse employment action, and (c) that there was a causal link between the protected activity and the adverse employment action. *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d

1017, 1022-23 (N.D. Cal. 2012); *Oyarzo v. Tuolumne Fire Dist.*, 955 F. Supp. 2d 1038, 1096-97 (E.D. Cal. 2013).

32. The elements of a *prima facie* case for the tort of IIED are: (a) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (b) suffering severe or extreme emotional distress; and (c) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1088 (9th Cir. 1991). "To be outrageous, conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

33. Plaintiff explicitly predicates his claims, at least in part, on alleged violations of the CBAs, which is alone sufficient for preemption. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218 (1985) ("Because the right asserted not only derives from the contract, but is defined by the contractual obligation … any attempt to assess liability … will involve contract interpretation"). For example, Plaintiff alleges:

a) He was not afforded lunch breaks "in compliance with California's Labor Code ***and under the Collective Bargaining Agreement***." (Compl. ¶ 20 [emphasis added]).

b) He did not receive a 2.6% raise as required by the "***union contract***." (*Id.* at ¶ 36 [emphasis added]).

c) Bantilan gave overtime hours to probationary employees, which Plaintiff claims "violation of ***union rules***[.]" (*Id.* at. ¶¶ 64-66 [emphasis added]).

34. As the chart below demonstrates, Plaintiff identifies a number of additional allegedly adverse actions the propriety of which are governed by the CBAs. For example:

| Retaliation/Adverse Action | CBA Provision |
|---|---|
| Bantilan assigned overtime work to probationary employees rather than Plaintiff.  (Compl. ¶¶ 64, 104). | Bantilan Dec. Exh. A Art. 23.00 (addressing method of assigning overtime to employees, including probationary employees); Exh. B Art. 7 § 2(E) (same). |
| Refusal to pay Plaintiff deployment premium and reimburse expenses during trip to New Zealand.  (*Id.* at ¶¶ 49-50, 114). | *Id.* at Exh. A Art. 21.00 Temporary Duty Assignment (addressing expense reimbursement during Temporary Duty Assignment); Exh. B Art. 7 §§ 8-9 (same). |
| Bantilan interfered with Plaintiff's "civil rights" of filing a grievance with his union.  (*Id.* at ¶¶ 137, 173). | *Id.* at Exh. A Art. 19.1-19.3 (discussion union and employer grievance handling); Exh. B Art. 3 §§ 1-4 (same). |
| Failing to compensate Plaintiff for hours and money lost by being removed from a flight. (*Id.* at ¶¶ 88, 137). | *Id.* at Exh. A Art. 22.3 Reporting Time and Call Back Time (addressing compensation for employee who reports to scheduled shift for which work is not available); Exh. B Art. 7 § 6 (same). |
| Failing to schedule Plaintiff for deployments.  (*Id.* at ¶¶ 114). | *Id.* at Exh. A Art. 21.00 Temporary Duty Assignments (addressing the method of selecting employees for temporary assignments away from normal work locations); Exh. A Art. 04.00 Management Rights (giving management authority over shifts, performance standards, rules of conduct, just cause discipline, and efficiency); Exh. B Art. 7 § 8 (same). |
| Writing up and otherwise disciplining Plaintiff. (*Id.* at ¶¶ 27, 31, 137, 217) | *Id.* at Exh. A Art. 18.00 Discharge and Disciplinary Action (describing situations in which employer may impose disciplinary action on employees); Exh. B Art. 1 § 5, Appendix B (same). |

35.     Notably, Plaintiff has filed and threatened to file numerous grievances

under the CBAs regarding the conduct alleged in the Complaint.  (Compl. ¶¶ 66-68, 103-106).

36.    To determine if any of the above constitute cognizable adverse actions and/or were based on legitimate non-discriminatory/non-retaliatory factors, the Court must "determine whether [the company] was acting consistently with its duties under the CBA … by interpreting [its] provisions."  *Perugini*, 935 F.2d at 1088; *see also Hyles v. Mensing*, 849 F.2d 1213, 1216 (9th Cir. 1988) (claims preempted where court must "interpret the CBA to determine the scope of [defendant's] authority" exercised under the agreement).

37.    Thus, Plaintiff's discrimination and retaliation-based claims are preempted and subject to removal.  *See Audette v. Int'l Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir. 1999) (state law claims alleging sex-based discrimination and harassment preempted by Section 301); *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir. 1996) (claims are preempted because plaintiff's "**discrimination claim** turns on questions of promotion, seniority, and **assignment to training programs**, all of which are provided for in the CBA.  [The employer] will undoubtedly **rely on the CBA as its legitimate, non-discriminatory reason** for [Plaintiff's] treatment.  When [Plaintiff] then attempts to show that [Defendant's] stated reason is pretextual, the CBA would have to be interpreted[.]") (emphasis added); *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 645 (9th Cir. 1989) ("[T]he claims that [plaintiff] was accused of unsatisfactory work, of being a trouble maker, harassing other employees, and of other dishonest acts all relate to matters of discipline governed by section 12 of the collective bargaining agreement.  Because disputes concerning the employment relationship are governed by the collective bargaining agreement, they are preempted by federal labor law."); *Mayfield v. Kaiser Foundation Health Plan, Inc.*, 2009 WL 10671702, *4-5 (C.D. Cal. Oct. 27, 2009) (allegation "that Plaintiffs were terminated because of complaints about their working conditions or

underpayment" was preempted because of detailed provisions in CBA covering related topics).

38. Similarly, Plaintiff's IIED claim – which in part derives from the conduct giving rise to Plaintiff's discrimination and retaliation claims – turns on the application of disputed CBA terms. *See generally Parker v. It's a Laugh Prods.*, 2009 WL 10671983, \*6 (C.D. Cal. May 28, 2009) ("In the context of claims for negligent and intentional infliction of emotion distress, courts have generally found that analysis of the CBA is necessary to resolve such a claim if the conduct which allegedly gave rise to the emotional distress is addressed by the CBA.").

39. Where an IIED claim "concern[s] working conditions and disciplinary procedures covered by the collective bargaining agreement" they are "clearly preempted." *Scott v. Machinists Auto. Trades Dist. Lodge No. 190*, 827 F.2d 589, 594 (9th Cir. 1987) (IIED claims are preempted "when they arise out of … the conduct of the defendants in the investigatory proceedings."). Indeed, the CBA need not even explicitly address the matter at issue to give rise to preemption. *See Perugini*, 935 F.2d at 1088 ("Determining whether refusal to assign plaintiff 'light duty' work was sufficiently extreme for IIED claim required court to 'look to the CBA to judge the appropriateness of [the employer's] behavior … No provision of the CBA specifically addresses light duty, but several provisions relate to … discrimination…; … procedures for discharge … medical leave of absence … employment of workers with disabilities[] and … grievance and arbitration. We can determine whether [the employer] was acting consistently with its duties under the CBA in refusing to reassign [the plaintiff] only by interpreting these provisions.").

40. Moreover, determining if conduct is "so extreme as to exceed all bounds of that usually tolerated in a civilized community is not an independent, nonnegotiable standard of behavior. Rather, it depends upon the relationship between plaintiff and defendants such that the terms of the CBA are relevant in

evaluating the reasonableness or outrageousness of defendants' conduct. … [B]ecause plaintiff's IIED claim requires consideration of the reasonableness of defendants' behavior … depends on whether that behavior violated the CBA, the claim is preempted." *Ortiz v. Permanente Med. Group, Inc.*, 2013 WL 1748049, \*7 (N.D. Cal. Apr. 23, 2013); *see also Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1350-51 (9th Cir. 1985) (plaintiff's emotional distress claim based on employer warning letters, reassignment of work duties, use of abusive language, and excessive surveillance, were inextricably intertwined with CBA and preempted by Section 301).

41.     Thus, Plaintiff's IIED claim is preempted as it requires analysis and interpretation of multiple provisions of the CBAs.

### B.     This Action is Removable Under the Federal Enclave Doctrine

42.     "Article 1, Section 8, Clause 17 of the United States Constitution grants Congress the power to 'exercise exclusive legislation in all cases whatsoever' over all places purchased with the consent of a state 'for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings.'" *Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1034 (N.D. Cal. 2005).  In addition, the federal government may acquire exclusive federal jurisdiction over property purchased, leased, or otherwise ceded by the state. *See Paul v. United States*, 371 U.S. 245, 264-68 (1963) (Noting that California ceded to the United States "exclusive jurisdiction" over lands "held, occupied, or reserved" by the United States "for military purposes or defense"); Gov't Code § 126(a)(1)(B)(iv).  Such properties are referred to as "federal enclaves."

43.     "Federal courts have federal question jurisdiction over [] claims that arise on 'federal enclaves.'" *Durham*, 445 F.3d at 1251.  The claims of an "employee of a contractor operating on [an] enclave … are governed by the enclave's law, rather than by state law." *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 479 (2000).

44. Multiple courts have concluded that NASA and Air Force facilities are federal enclaves. *See, e.g.*, *Powell v. Tessada & Assocs., Inc.*, 2005 WL 578103, *1-2 (N.D. Cal. Mar. 10, 2005) (NASA Ames Research Center is a federal enclave); *Taylor*, 78 Cal. App. 4th at 481 (Vandenberg Air Force Base in California is a federal enclave); *J & L Mgm't Corp. v. New Era Builders, Inc.*, 2009 WL 1707886, *4 (N.D. Ohio June 17, 2009) (concluding that National Space and Aeronautics ("NASA") Glenn Research Center is a federal enclave); *Hamrick v. A & I Co.*, 2009 WL 1077930, *1 (S.D. Wv. Apr. 20, 2009) (treating Edwards Air Force Base as a federal enclave).

45. As noted above, Plaintiff worked at a NASA facility and was subject to CBAs applicable to employees working at Edwards Air Force Base and NASA Armstrong Aircraft Operations. (Compl. ¶ 32; Bantilan Dec. Exh. A Art. 01.00; Exh. B Art. 1 § 1(A)). The events giving rise to Plaintiff's claims arose at these locations. (*See generally* Compl.).

46. Accordingly, the Complaint is removable to federal court pursuant to the federal enclave doctrine.

### C.  The Court Has Supplemental Jurisdiction Over Any Non-Preempted Claims

47. To the extent that any of Plaintiff's claims are not preempted by the LMRA or the federal enclave doctrine, they are "part of the same case or controversy" as the removable causes of action. *See* 28 U.S.C. § 1367. Thus, this Court has supplemental jurisdiction over all of Plaintiff's claims. *See Bobadilla-German v. Bear Creek Orchards, Inc.*, 641 F.3d 391, 394 (9th Cir. 2011).

### VI.  NOTICE TO PLAINTIFF AND THE SUPERIOR COURT

48. Contemporaneously with the filing of this Notice of Removal, Defendants will provide notice of such filing to Plaintiff's counsel of record.

49. A copy of the Notice of Removal will also be filed with the Clerk of the Superior Court of the County of Los Angeles, California.

WHEREFORE, having provided notice as required by law, the above-entitled action should hereby be removed from the Superior Court of the County of Los Angeles to this Court.

Dated:  November 21, 2017                    POLSINELLI LLP


                                            /S/ MICHELE HAYDEL GEHRKE
                                            MICHELE HAYDEL GEHRKE
                                            EMILY KNOLES
                                            BRIAN K. MORRIS

                                            Attorneys for Defendants
                                            L-3 COMMUNICATIONS
                                            VERTEX AEROSPACE, LLC
                                            (erroneously sued as L3
                                            TECHNOLOGIES, INC.)
                                            PATRICK K. BANTILAN