Polsinelli LLP
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
(415) 248-2100

JS-6

NOTE: CHANGES MADE BY THE COURT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL KROEGER, an individual, | Case No. 2:17-cv-08489-JFW-AGR |
| Plaintiff, | **STATEMENT OF DECISION** |
| v. | |
| L3 TECHNOLOGIES, INC., a corporation; PATRICK K. BANTILAN, an individual; and DOES 1 through 10, | |
| Defendants. | |

L3 Communications Vertex Aerospace, LLC[1] ("L3") and Patrick K. Bantilan ("Bantilan")[2] move to dismiss Darrel Kroeger's ("Plaintiff")[3] first through fourth, and sixth through twelfth causes of action. After considering Defendants' motion and the properly-submitted arguments of the Parties, the Court rules as follows:

---

[1] Defendant L3 was erroneously sued as L3 Technologies, Inc.
[2] Collectively referred to as "Defendants."
[3] Defendants and Plaintiff are collectively referred to as the "Parties."

## I. PROCEDURAL HISTORY

### A. Complaint and Removal

Plaintiff filed the Complaint in Los Angeles County Superior Court on October 6, 2017. Plaintiff brings individual and representative Private Attorneys General Act (PAGA) claims, a number of standalone statutory causes of action, and a claim for intentional infliction of emotional distress (IIED). Defendants removed the action to this Court on November 21, 2017. (*See* Dkt. No. 1).

### B. Defendants Motion to Dismiss

Defendants filed the instant motion to dismiss on February 5, 2018 and set a March 5, 2018 hearing date. (Dkt. No. 33).[4] Plaintiff's opposition was due on February 12, 2018. C.D. Cal. L.R. 7-9. Plaintiff did not meet this deadline.

On February 13, 2018 – without requesting leave to file a late opposition – Plaintiff's counsel filed a one-page declaration stating, in relevant part:

> 2. On the evening of October 12, 2018, while reviewing the file of the instant case, I first saw that Defendants had filed a (second) Motion to Dismiss Pursuant to FRCP 12(b) AND 12(b)(6) and that a hearing date was set for March 5, 2018.
>
> 3. Last week, when Defendants' Motion was filed, I was in a building with very limited internet service.
>
> 4. I respectfully request that the court accept the documents I previously filed in opposition to Defendants' motion and that Leave to Amend be granted.

---

[4] Defendants first moved to dismiss on November 28, 2017. The Court struck the moving and opposition papers and ordered the Parties to meet and confer further to try to resolve Defendants' pleading challenges. Plaintiff agreed to dismiss the first (PAGA/overtime) cause of action against L3 and Bantilan; the eleventh (Retaliation in Violation of Public Policy) cause of action against L3; and the second (PAGA/Lab. Code § 6310), third (PAGA/Lab. Code § 1102.5), fourth (PAGA/expenses), and fifth (payroll/personnel records) causes of action against Bantilan. (Dkt. No. 32, ¶¶ 3(b)-(d)).

(Dkt. No. 32). The Court denied Plaintiff's request to consider its previously-filed opposition. (Dkt. Nos. 36). Four hours later, Plaintiff re-filed the very opposition that the Court informed Plaintiff it would not consider. (Dkt. No. 37).

## II. THE PARTIES

Plaintiff is an L3 aircraft mechanic. Bantilan became Plaintiff's supervisor in December 2013. (Compl. ¶¶ 6-8, 15). During the relevant time period, Plaintiff has been a union member subject to one of three collective bargaining agreements ("CBA") negotiated with the International Association of Machinists and Aerospace Workers, AFL-CIO District Lodge 725 and Aeronautical Industrial Local Lodge 727-P ("Union").[5]

## III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Courts will grant a motion to dismiss when there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242. Federal Rule of Civil Procedure 12(b)(1) provides dismissal for lack of subject-matter jurisdiction. Courts evaluate a motion under Rule 12(b)(1) "as it would a motion to dismiss under Rule 12(b)(6)[.]" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

In evaluating Defendants' motion, the Court disregards conclusory legal and factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, mere recitation of the elements of a cause of action is insufficient to state a claim. *Id.* at 678. To avoid dismissal, the well-plead factual allegations must "plausibly give rise to an entitlement to relief." *Id.* at 678-79.

---

[5] These CBAs cover(ed) the terms and conditions of Plaintiff's employment, including but not limited to work hours, pay rates, benefits, breaks, overtime assignments, expense reimbursement, and dispute resolution. (Dkt. 1-3, 1-4, 6-1).

Plaintiff bases his second, third, sixth, seventh, and twelfth causes of action on conduct that is arguably protected or arguably prohibited by the National Labor Relations Act (NLRA). Resolving Plaintiff's second, third, fourth, sixth, seventh, eighth, ninth, tenth, and twelfth causes of action would require interpretation of one or more CBAs[6], resulting in the claims being preempted by the Labor Management Relations Act (LMRA). Accordingly, the NLRA and/or the LMRA preempt Plaintiff's second through fourth, and sixth through twelfth claims. Separately, Plaintiff failed to state a claim for IIED, violation of the Ralph Act, or violation of the Bane Act. Thus, as set forth below, Defendants' motion is hereby **GRANTED**.[7]

## IV. DISCUSSION

### A. The Court Will Not Consider Plaintiff's Opposition

This Court's Standing Order provides that "**[f]ailure to timely respond to any motion shall be deemed by the Court as consent to the granting of the motion**." (Dkt. No. 11, ¶ 5(g) [emphasis in original]). "Documents not filed in compliance with the Court's requirements *will be stricken* and will *not be*

---

[6] The Court considers the CBAs in ruling on Defendants' motion. *See Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1193 (C.D. Cal. 2015) ("Because the 2015 CBA forms the basis for [Defendant's] argument that … plaintiffs' claims are completely preempted by the LMRA, the court can consider it.").

[7] While the Court generally grants leave to cure a defective complaint, it need not do so where, as here, an amendment would be futile. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

3
STATEMENT OF DECISION

*considered* by the Court." (*Id.* at ¶ 5(a) [emphasis added]).[8]

Plaintiff made no attempt to file an opposition until after the deadline for doing so. Plaintiff did not request leave to file a tardy opposition. Rather, Plaintiff asked the Court to accept his previously-submitted opposition. (Dkt. No. 18, ¶ 3). When the Court refused to do so, Plaintiff waited four hours and refiled an exact copy of the document this Court declined to consider. (Dkt. Nos. 36-37).

Plaintiff's submission flouts this Court's order and wastes judicial resources. Plaintiff's opposition is not addressed to the motion before this Court. It contains arguments regarding claims Plaintiff agreed to dismiss (*e.g.*, overtime), and opposes dismissal for reasons Defendants do not raise (*e.g.*, federal enclave). Plaintiff's untimely submission unfairly prejudiced Defendants by reducing the time and space they had to address substantive arguments in the reply.[9]

The Court declined to accept Plaintiff's tardy opposition on February 14 at 11:20 a.m. It also declines to accept that same filing on February 14 at 3:43 p.m. The Court will not consider Plaintiff's opposition and grants Defendants' motion to dismiss. (*See* Dkt. No. 11, ¶ 5(g)). However, as set forth below, even if Plaintiff filed a timely opposition, the Court would still grant Defendants' motion.

---

[8] This Court's orders and the local rules emphasize the importance of compliance with timelines and the consequences of failing to do so. (*See* Dkt. No. 11, ¶ 3(b) ["["[D]ocuments … which are improperly filed will not be accepted"]; Dk. No. 18, ¶ 1 ["[I]mproperly filed [documents] will not be accepted"]; *id.* at ¶ 3 ["[F]ailure to timely respond to any motion shall be deemed by the Court as consent to the granting of the motion."]; C.D. Cal. L.R. 7-12 ["Court may decline to consider any … document not filed within the deadline … [F]ailure to file [] within the deadline, may be deemed consent to the granting … of the motion[.]"]; C.D. Cal. L.R. 7-13 [A party who files a tardy opposition "shall be subject to [] sanctions[.]"]).

[9] Compounding these missteps are the explanations Plaintiff's counsel provides for making them. Counsel explains her unawareness of Defendants' motion by her office's "very limited" Internet service during the week of February 5. Even if true, "very limited" Internet access is sufficient to receive an ECF notification.

## B. The NLRA Preempts Plaintiff's Second, Third, Sixth, Seventh, and Twelfth Causes of Action

The NLRA preempts state claims that concern conduct that is arguably protected or prohibited under Sections 7 and 8 of the Act. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). "It is not the label affixed to the cause of action … that controls the determination" of *Garmon* preemption. *Local 100, United Assoc. of Journeymen & Apprentices, v. Borden*, 373 U.S. 690, 698 (1963). Where a claim is based "at least in part on union activities" it is preempted irrespective of Plaintiff's characterization. *Brands v. First Transit, Inc.*, 278 Fed. Appx. 722, 724 (9th Cir. 2008).

Applying this framework, courts have repeatedly dismissed retaliation and common law claims predicated on alleged interference with NLRA-protected activities. *See Mayes v. Kaiser Found. Hosps.*, 917 F. Supp. 2d 1074, 1084-85 (E.D. Cal. 2013) (NLRA preempts Health and Safety Code § 1276.4 retaliation claim based on employee safety complaints); *Lee v. Am. Red Cross*, 2009 WL 10671966, *2-3 (C.D. Cal. Mar. 26, 2009) (Lab. Code § 1102.5 and Civil Code § 51.7 claims based on allegations that defendant (a) retaliated against plaintiff for discussing working conditions; and (b) ran over plaintiff's foot with a car based on her position in a labor dispute are "squarely within the ambit of sections 7 and 8 of the NLRA."); *Platt v. Jack Cooper Transport. Co., Inc.*, 959 F.2d 91, 94 (8th Cir. 1992) (§§ 1102.5 and 6310 claims alleging "discharge for making safety complaints" preempted under *Garmon*).

Plaintiff's second, third, sixth, seventh, and twelfth causes of action principally relate to activity that is arguably protected or prohibited by Sections 7 and 8 of the Act. For example, Plaintiff alleges that L3 retaliated because, among other things, he and other employees: (a) complained about alleged non-compliance with the CBA; (b) complained about L3's payment and allocation of overtime; (c) complained about Bantilan's threat to shoot Plaintiff for filing grievances; and (d)

engaged in union activities. (Compl. ¶¶ 20, 64-65, 68, 104-106, 135-137, 165-167, 173, 216-217, 226). Plaintiff bases his IIED, Ralph Act, and Bane Act claims on Bantilan's alleged retaliatory threat made to thwart Plaintiff's effort to file grievances. (*Id.* at ¶¶ 165-167, 173, 216(6), 217(8), 226). Read as a whole, Plaintiff's central contention is that L3 and Bantilan retaliated against him for engaging in NLRA-protected activities. *See, e.g.*, *Mayes*, 917 F. Supp. 2d at 1084 ("Concerted activity designed to secure the payment of overtime is protected activity" and "complaint[s] [] about safety … [are] arguably protected … and so [retaliation] based on the complaint is arguably prohibited."); *Town & Country LP Gas Serv. Co.*, 255 NLRB 1149, 1150 (1981) ("filing [] a grievance under a [CBA] grievance procedure is concerted activity protected by Section 7 of the Act.").

Because Plaintiff's second, third, sixth, seventh, and twelfth causes of action are intertwined with activity that is arguably protected or prohibited by Sections 7 and 8 of the Act, they are preempted and, thus, are dismissed.[10]

### C. The LMRA Preempts Plaintiff's Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Twelfth Causes of Action

Section 301 of the LMRA grants federal courts jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization[.]" 29 U.S.C. § 185(a). Section 301 "has been construed [] broadly to cover most state-law actions that require interpretation of labor agreements." *Builders &*

---

[10] Plaintiff contends NLRA preemption does not apply where arguably protected activities are one of multiple motives for discrimination or retaliation. (Dkt. No. 37, p. 17:11-12). The Court rejects Plaintiff's argument. *See, e.g.*, *Brands*, 278 Fed. Appx. at 724 (dismissing claims based on NLRA preemption because even though "the causes of action were couched in discrimination terms" they were based "***at least in part*** on union activities[.]") (emphasis added); *Short v. Cmty. Mem'l Hosp.*, 2004 WL 2616293, *5 (Cal. Ct. App. Nov. 18, 2004) ("Where state labor policies and arguably protected NLRA conduct are intertwined, the controversy must be submitted to the [NLRB]."); *Henry v. Intercontinental Radio, Inc.*, 155 Cal. App. 3d 707, 715 (1984) (same).

6
STATEMENT OF DECISION

*Contractors v. Local 302,* 109 F.3d 1353, 1356 (9th Cir. 1997). Where resolution requires interpretation of a CBA, Section 301 preemption applies and the claims at issue must be dismissed. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220 (1985).[11] Plaintiff's second, third, sixth, seventh, eighth, ninth, and tenth causes of action allege various forms of retaliation and discrimination. The alleged retaliatory conduct gives rise to Plaintiff's twelfth cause of action for IIED. Plaintiff's fourth cause of action seeks payment for various expenses the reimbursement of which is governed by CBA.

Plaintiff explicitly predicates his claims, at least in part, on a number of alleged violations of a CBA. (*See, e.g.*, Compl. ¶¶ 49-50, 64-66, 88, 103-106, 114; Dkt. No. 1-3, Arts. 04.00, 14.00, 18.00 19.1-19.3, 21.00, 22.3, 23.00, 24.4-24.5). This alone is sufficient for preemption. *Allis-Chalmers Corp.,* 471 U.S. at 218 ("[T]he right asserted … derives from the [CBA]" and "is defined by [] contractual obligation … any attempt to assess liability … will involve [] interpretation).

Additionally, Plaintiff's claims largely turn on alleged adverse actions and legal violations, the propriety of which the CBAs govern and that are (or have been) the subject of multiple contractual grievances[12] by Plaintiff. (Compl. ¶¶ 103-106). Such allegedly adverse actions include, but are not limited to: (a) failing to grant Plaintiff a light duty work assignment; (b) assigning overtime to probationary

---

[11] Plaintiff has been subject to one of three CBAs negotiated by his Union throughout the relevant time period. (*See* Dkt. 1-2; Compl. ¶¶ 20, 32). The Union is a labor organization that is subject to the provisions of the LMRA. *See* 29 U.S.C. §§ 152, 185(a); Dkt. 1-3, p.5, Art. 01.00; Dkt. 1-4 p.7, Art. 1, § 1).

[12] Plaintiff discussed the topics of his grievances in the Complaint. *See* Compl. ¶ 106 ["Bantilan threatened to shoot a couple of subordinates ***because I was going to file a grievance***. This is a …***violation of the [CBA]*** [and] a violation of the [NLRA]."]; *id.* at ¶ 105 ["grievance [] sought[] [t]o be paid for 14 hours and whole for the flight time I was scheduled to work on October 14, 2016. … I was discriminated against and denied my schedule[d] flight time … ***due to my Union Membership and Union Activity***. L-3 is in ***violation of the [CBA]*** … and the *[NLRA]*."]; *id.* at ¶ 104 ["the first grievance [] stated … '[w]as not asked to work and a probationary employee …worked" in violation of CBA] [emphasis added]).

employees; (c) assignment to deployments; (d) pay during deployments; (e) "show up" compensation for the day Plaintiff was removed from a flight; and (f) writing up an disciplining Plaintiff. (*See, e.g.*, Compl. ¶¶ 27, 31, 49, 50 64, 86, 88, 104, 112, 114, 137(3), 194, 217). To determine if these alleged adverse actions were based on legitimate non-discriminatory/non-retaliatory factors, and/or otherwise violated the law, the Court must "determine whether [the company] was acting consistently with its duties under the CBA … by interpreting [its] provisions." *Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1088 (9th Cir. 1991); *see also Hyles v. Mensing*, 849 F.2d 1213, 1216 (9th Cir. 1988) (claims preempted where court must "interpret the CBA to determine the scope of [defendant's] authority" exercised under the agreement). Accordingly, the LMRA preempts Plaintiff's expense reimbursement, discrimination, and retaliation-based claims. *See Audette v. ILWU*, 195 F.3d 1107, 1113 (9th Cir. 1999) (sex discrimination/harassment claims preempted by § 301); *Silva v. USF Reddaway, Inc.*, 2017 WL 2117397, *4-5 (N.D. Cal. May 15, 2017) (FEHA disability claims preempted by LMRA).

Similarly, the LMRA preempts Plaintiff's IIED claim. *See, e.g.*, *Wise v. Solar Turbines, Inc.*, 2014 WL 2573324, *3 (S.D. Cal. June 9, 2014) ("A plaintiff faces an 'uphill battle' when he attempts to avoid Section 301 preemption of an IIED claim."). Determining whether conduct is sufficiently extreme for an IIED claim "is not an independent, nonnegotiable standard of behavior. … [I]tdepends upon the relationship between [the parties] such that the terms of the CBA are relevant in evaluating the reasonableness or outrageousness of defendants' conduct." *Ortiz v. Permanente Med. Group, Inc.*, 2013 WL 1748049, *7 (N.D. Cal. Apr. 23, 2013). Thus, Plaintiff's IIED claim is preempted as it requires analysis and interpretation of multiple provisions of the CBAs.

Because Plaintiff's second, third, fourth, sixth, seventh, eighth, ninth, tenth, and twelfth causes of action are preempted by the LMRA, they are dismissed.

## D. Plaintiff Failed to State an IIED Claim

"To support an IIED claim, the conduct … must be [] directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *McKenna v. Permanente Med. Group, Inc.*, 894 F. Supp. 2d 1258, 1273 (E.D. Cal. 2012). The defendant must "intend[] to inflict injury" or engage in the conduct "with the realization that injury will result." *Id.* (*quoting Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993)).[13]

Bantilan's alleged threat uttered to a third party and the related alleged indignities (*e.g.*, going to Plaintiff's work area; glaring; etc.) are insufficiently "extreme" for an IIED claim. *See Otano v. Ocean*, 2013 WL 2370724, *4 (C.D. Cal. May 30, 2013) (dismissing IIED claim predicated on death threat because, *inter alia*, the threat "was made to a third-party and not to Plaintiff himself."); *Saleh v. United States*, 2013 WL 5439140, *11 (S.D.N.Y. Sept. 27, 2013) (Plaintiff did not state an IIED claim where threats to plaintiff's life "were made to [third party], rather than to [plaintiff]. Thus, Plaintiff fails to allege facts that causally connect the death threat to his distress, or that show that the threat was made with the purpose of inflicting emotional distress.").

Additionally, Plaintiff's allegations rebut any suggestion that Bantilan uttered the alleged threat with the requisite intent to harm or even *reach* Plaintiff. Plaintiff alleges that in his absence, Bantilan made a remark to a third party, who told another third party, who then told Plaintiff. (*See* Compl. ¶ 68). Bantilan's single remark to a third party is not a sufficient basis for the Court to conclude that Bantilan had the requisite "intent" for IIED. *See Saleh*, 2013 WL 5439140, *11. Accordingly, Plaintiff has failed to adequately allege an IIED claim, and,

---

[13] "[IIED] not extend to mere insults, indignities, *threats*, annoyances, petty oppressions, or other trivialities." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) (emphasis in original). It also does not apply to normal employment related decisions. *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1190 (C.D. Cal. 2002).

9

thus, Plaintiff's twelfth cause of action is dismissed.

### E. Plaintiff Failed to State a Ralph or Bane Act Claim

To state a claim under the Bane Act or Ralph Act, the Plaintiff must allege, among other things, a threat of violence intended to interfere with a protected right based on a protected characteristic – in this case, based on Plaintiff's position in a labor dispute. *See Campbell v. Feld Ent., Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014); *Jones v. Kmart Corp.*, 17 Cal.4th 329, 337-38 (1998). Plaintiff has not adequately alleged a threat or the requisite intent to interfere with protected rights.

Plaintiff does not allege Bantilan directly threatened him. Nor does Plaintiff identify any case indicating that a remark to a third party about which a plaintiff only learns due to fortuitous and unintended events constitutes a threat under Bane Act or Ralph Act. Moreover, Plaintiff does not allege facts suggesting Bantilan's remark to a third party was intended to reach Plaintiff. The manner in which Plaintiff learned of the threat in question (*i.e.*, A told B; B told C; C told D) suggests the absence any real threat or the intent to interfere with protected rights. *See Justin v. City & Cnty. of San Francisco*, 2008 WL 1990819, *9 (N.D. Cal. May 5, 2008) (§ 52.1 is only applicable when "defendant intends … to interfere with a separate … right … ; it does not apply … absent a showing that the act was done to interfere with a separate state or federal constitutional right.").

Accordingly, Plaintiff failed to allege adequate facts to state a Bane Act or Ralph Act claim, and, thus, Plaintiff's sixth and seventh causes of action are dismissed.

## V. CONCLUSION

Pursuant to the agreement of the Parties, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's first cause of action against L3 and Bantilan; Plaintiff's

eleventh cause of action against L3; and Plaintiff's second, third, fourth, and fifth causes of action against Bantilan. (Dkt. No. 32).

In addition, Defendants' motion to dismiss is **GRANTED**. The Court **DISMISSES WITH PREJUDICE** Plaintiff's second, third, fourth, eighth, ninth, and tenth causes of action against L3 and Plaintiff's sixth, seventh, and twelfth causes of action against Bantilan.[14]

Therefore, the only claim remaining is Plaintiff's fifth cause of action against L3 for failure to timely produce employee file and payroll documents. In light of the fact that the Court has dismissed the only claims over which this Court has original jurisdiction, and after considering judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiff's fifth cause of action.[15] *See* 28 U.S.C. § 1367(c)(3); *See Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims.'"). Accordingly, this action is **REMANDED** to Los Angeles Superior Court.

**IT IS SO ORDERED**.

Date: March 15, 2015

*[signature]*

Hon. John F. Walter

---

[14] Plaintiff submitted declarations including facts outside the scope of the complaint and sought judicial notice of a variety of documents related to the federal enclave doctrine. The Court declines to consider these submissions. *See, e.g.*, *Schaldach v. Dignity Health*, 2015 WL 5896023, *3 (E.D. Cal. Oct. 6, 2015). Plaintiff's request for judicial notice is **DENIED**.

[15] In addition to LMRA preemption, Defendants also removed this action based upon the federal enclave doctrine. However, Defendants withdrew their federal enclave defense. (Dkt. No. 32).

_____                    _____